**United States District Court**
<span style="font-size:smaller">For the Northern District of California</span>

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM ZABIT, | No. C 06-01252 JSW |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART CATERPILLAR, INC.'S AND PETERSON POWER SYSTEMS, INC.'S MOTIONS TO DISMISS** |
| FERRETTI GROUP, USA, et al. | |
| Defendants. | |

## INTRODUCTION

This matter comes before the Court upon consideration of the motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) filed by Peterson Power Systems, Inc. ("Peterson"), and Caterpillar, Inc. ("Caterpillar"). Having considered the parties' pleadings, and relevant legal authority, and having had the benefit of oral argument, the Court HEREBY GRANTS IN PART AND DENIES IN PART both motions.

## BACKGROUND

**A.    Factual Background.**

In April, 2000, in Stuart, Florida, Plaintiff William Zabit ("Zabit") purchased a 1999 Ferretti yacht for $589,000. In the First Amended Complaint ("FAC"), Zabit alleges that he took delivery of the yacht from Allied Marine Group, Inc. ("Allied") in April 2000.[1] (FAC ¶ 6.) Zabit alleges that he received Ferretti's warranty "after or at the time of delivery and after the time of sale." (*Id.* ¶ 7.) According to the record, Zabit signed the Ferretti Acceptance of Vessel

---

[1]    On September 28, 2006, pursuant to Stipulation, Zabit dismissed Allied from this action.

and Limited Warranty (hereinafter "Ferretti Limited Warranty") on or about June 22, 2000. The signature block of the Ferretti Limited Warranty reads as follows: "**EXECUTED** by the undersigned owner this [22nd of June 2000] for the purpose of evidencing the date of delivery of the Yacht; its acceptance by the undersigned owner, and, the acknowledgment and acceptance by the undersigned owner of the terms of the **LIMITED WARRANTY** granted hereunder." (Declaration of Donald Flippen in Support of Ferretti's Motion to Dismiss ("Flippen Decl."), Ex. A at 3.) The record establishes that Zabit signed the Ferretti Limited Warranty. (*Id.*)

The Ferretti Limited Warranty provides that "[a]ccessories, components or parts which are not Materials warranted hereunder, including only for purposes of reference but not limited to ... *engines* ... will be covered by the warranties of their separate manufacturers and are not warranted hereunder." (Flippen Decl. Ex. A § II).) The Ferretti Limited Warranty further provides that "[u]pon delivery of the Yacht to the original owner, the Warrantor [*i.e.* Ferretti] shall deliver to the original owner or shall cause to be delivered to the original owner the warranties certificates of the respective manufacturer of such components, accessories or parts," and states that "[t]he owner shall thereafter be solely responsible for determining whether any other such warranties are in effect and *agrees that the Warrantor shall bear no responsibility or liability for any other such warranties*." (*Id.* (emphasis added).)

The yacht's two engines were not manufactured by Ferretti. Rather, they were manufactured by Caterpillar. (FAC ¶ 8.) According to the facts set forth in the FAC, Zabit did not receive a warranty with respect to these engines at the time of purchase or delivery. (*Id.*)

Caterpillar's Limited Warranty provides, in pertinent part, that for "new ... 3126 ... marine propulsion engines and marine transmissions sold by Caterpillar for use with such engines, used in non-revenue producing pleasure craft applications the standard warranty period is 24 months or 1000 hours, whichever occurs first, after date of delivery to the first user." (*See* Declaration of Alexander Medina in Support of Caterpillar's Motion to Dismiss ("Medina Decl.") ¶ 5, Ex. D at 1.) An extended warranty period of sixty months or 2000 hours, whichever occurred first after the date of delivery to the first user, applies to "the following engine

components: cylinder block casing, crankshaft, connecting rod assemblies, cylinder head coating, ... " (*Id.* at 1.)

The Caterpillar Limited Warranty describes Caterpillar's responsibilities as follows:

> If a defect in material or workmanship is found during the *standard warranty period*, or the *extended warranty period* if applicable, Caterpillar will, during normal working hours and through a place of business of a Caterpillar dealer or other source approved by Caterpillar: Provide (at Caterpillar's choice) new, Remanufactured or Caterpillar-approved repaired parts or assembled components needed to correct the defect. ... Provide reasonable or customary labor needed to correct the defect, including labor to disconnect the product from and reconnect the product to its attached equipment, mounting, and support systems if required.
>
> For ... 3126 ... engines and any associated generator sets and/or transmissions (including any products of other manufacturers packaged and sold by Caterpillar): Provide travel labor, up to six hours round trip including reasonable mileage if, in the opinion of Caterpillar, the product cannot reasonably be transported to a place of business of a Caterpillar dealer or other source approved by Caterpillar.

(*Id.* (emphasis in original).)

With respect to the "User Responsibilities," the Caterpillar Limited Warranty provides, that "[d]uring the *standard and extended warranty periods*, the user is responsible for: ... Premium or overtime labor costs. Labor and material costs for product removal and reinstallation, except as stated under 'Caterpillar Responsibilities.'" (*Id.* (emphasis in original).)

Finally, the Caterpillar Limited Warranty provides, on the reverse of the document, that:

> **THIS WARRANTY IS EXPRESSLY IN LIEU OF ANY OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. REMEDIES UNDER THIS WARRANTY ARE LIMITED TO THE PROVISION OF MATERIAL AND SERVICES, AS SPECIFIED HEREIN. CATERPILLAR IS NOT RESPONSIBLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES**. ... For personal or family use engines or marine transmissions operating in the USA, its territories and possessions, some states do not allow limitations on how long an implied warranty may last nor allow the exclusion or limitation of incidental or consequential damages. Therefore, the previously expressed exclusion may not apply to you.

(*Id.* at 2 (capitalization and bold in original).)

In or about September 2002, Zabit received information suggesting that the yacht should not be used because the engines were defective and could result in harm to the owner or others and could fail at sea. (FAC ¶ 11.) Zabit contacted Ferretti for assistance in rectifying the defective engines and received none. (*Id.* ¶ 12.) "[A]fter an extended period of time of being mislead by [Ferretti] regarding expected assistance, [he] then contacted Caterpillar asking for assistance." (*Id.*) Caterpillar and Peterson responded to him "and after additional delays" advised him that the engines would be replaced only if he incurred all costs and resulting losses involved in the removal and replacement of the engines. (*Id.* ¶ 13.) According to Zabit "[t]his was a willful violation and misrepresentation of warranty law." (*Id.* ¶ 14.)

Zabit also alleges that "Peterson Power Systems/Caterpillar[2] also wrongfully and willfully told [him] to either immediately accept the offer as presented or lose any rights to receive warranty assistance for the defective product." (*Id.* ¶¶ 14-15.) "Under duress and coercion, [Zabit] finally acceded to the defendant's [*sic*] delays, deceptions, and demands." (*Id.* ¶ 20; *see also id.* Count III ¶ 3D ("For a period of three years, Defendant Peterson and Caterpillar intentionally deceived and coerced plaintiff into finally agreeing to terms and conditions for warranty work, including paying for the removal and replacement of the motors that constitute willful, wanton, and reckless disregard of the plaintiff's rights ... .")

Zabit allegedly acceded to Caterpillar's and/or Peterson's "delays, deceptions, and demands" when he signed, on March 2, 2005, a "General Release." This General Release provided that, in return for the provision of two new Model 3126 Marine Engines at no charge, Zabit agreed to pay for all costs associated with removal and installation and would

> release and forever discharge Caterpillar, Inc. and its subsidiaries, affiliates, dealers, agents, servants, successors, assigns, and employees ... from all causes of action, suits, claims, demands and damages, in law or in equity, known or unknown, including all claims with respect to design, manufacture, repairs, warranties or extended service programs, arising out of or in any manner connected with the ownership, use, or failure of two (2) Model 3126 Caterpillar Engine, serial number 6SR00497 and 6SR00498, from their respective dates of purchase through the date of this Release.

---

[2] Zabit alleges on information and belief that "the actions of ... Peterson, were dictated or otherwise controlled or directed by ... Caterpillar." (*Id.* ¶ 18.)

4

(Declaration of William Zabit in Opposition to Caterpillar/Peterson Motions to Dismiss ("Zabit Decl."), Ex. C.) The General Release does not reference California Civil Code section 1542. (*Id.*) Finally, the General Release contains the following handwritten statement: "signing this release in now way precludes me or my heirs, assigns, agents, etc. from making any type of claim against Ferretti Yachts: the seller and manufacturer of the vessel containing the above described engines." (*Id.*)

The yacht's engines were replaced in 2005, approximately three years after they were discovered by Zabit to be defective. (FAC ¶ 17.) Zabit "lost all confidence in and enjoyment of the yacht," and "due to the fact that replacement engines were required in the yacht, and the extended passage of time the yacht was unusable, the yacht subsequently sold at a substantial loss." (*Id.* ¶¶ 23-24.)

**B.     Procedural Background.**

Zabit filed his initial complaint on February 21, 2006, against Ferretti, Caterpillar and Peterson. On June 8, 2006, Zabit filed the FAC, which is the operative pleading in this action. In his FAC, Zabit asserts causes of action against Caterpillar and Peterson for violations of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.,* breach of the implied warranty of merchantability, and fraud. On July 10, 2006, Caterpillar and Peterson filed their motions to dismiss the FAC.

**ANALYSIS**

**A.     Legal Standards on Motions to Dismiss.**

A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss should not be granted unless it appears beyond a doubt that a plaintiff can show no set of facts supporting his or her claim. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978). In ruling on a Rule 12(b)(6) motion, the complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). The court, however, is not required to accept legal conclusions cast in the form of factual allegations

5

if those conclusions cannot reasonably be drawn from the facts alleged. *Cleggy v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A statute of limitations defense may be raised by a motion to dismiss if the running of the statute is apparent on the face of the complaint. *See Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds, Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125 (9th Cir. 2002) (citation omitted). However, a district court may consider documents attached to a plaintiff's complaint without converting a motion to dismiss into a motion for summary judgment. *Hal Roach Studios, Inc. v. Richmond & Feiner Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989). Similarly, a court may consider documents referenced in but not attached to a complaint, where no party questions their authenticity, without converting a motion to dismiss into a motion for summary judgment. *Branch*, 14 F.3d at 453-54.

Caterpillar and Peterson submit, in support of their respective motions, the Caterpillar Warranty, and an unsigned copy of the General Release. In opposition, Zabit submits a signed copy of the General Release. Zabit does not dispute the authenticity of these documents and agrees that the Court may consider them in ruling on the motion to dismiss. (Opp. to Caterpillar/Peterson Motions at 7.) Zabit also submits a number of declarations, in which he proffers additional facts in support of his claims, including facts that he claims supports a showing of economic duress. Zabit also asked that the Court treat the Defendants motions as motions for summary judgment. The Court shall not convert the motions to dismiss into motions for summary judgment. It shall, however, consider the additional facts solely for the purposes of evaluating whether leave to amend would be futile.

**B.     The Motions to Dismiss Shall Be Granted In Part.**

Caterpillar and Peterson move to dismiss the FAC in its entirety on the ground that the General Release bars all claims asserted against them. In the alternative, they also seek to

6

dismiss Count II, Breach of Implied Warranty of Merchantability under the UCC, on the ground that Zabit cannot establish that he is in privity with either Caterpillar or Peterson.

### 1. Caterpillar's and Peterson's Motions to Dismiss Counts I and III Are Denied.

Caterpillar and Peterson assert that the express terms of the General Release bar all claims against them. Zabit may avoid the terms of the General Release if he is able to demonstrate he was induced to sign it by way of fraud. *See, e.g., Winet v. Price*, 4 Cal. App. 4th 1159, 1169 n.6 (1992) (citing *Casey v. Proctor*, 59 Cal. 2d 97, 102-04 (1963)). In the FAC, Zabit asserts a claim of fraud against Caterpillar and Peterson, and the facts asserted therein, if true, support a claim that Zabit was fraudulently induced to sign the General Release. Specifically, Zabit claims he did not receive a copy of the Caterpillar Limited Warranty. He also alleges that Peterson and Caterpillar "repeatedly told the plaintiff falsely that he had to pay removal and replacement costs" for the motors and that "[f]or a period of three years, [Defendants] intentionally deceived and coerced plaintiff into finally agreeing to terms and conditions for warranty work, including paying for the removal and replacement of the motors that constitute willful, wanton, and reckless disregard of the plaintiff's rights under the warranty." In essence, the facts alleged in the FAC suggest that Caterpillar and Peterson were misrepresenting the terms of the warranty and that Zabit was not aware of the true terms. Zabit also alleges that Defendants knew their representations were false, that Zabit relied on the representations in agreeing to the terms offered by Caterpillar and Peterson, the terms of which were incorporated into the General Release. (FAC, Count III, ¶ 3A-D.) On these facts, and given the stage of this litigation, the Court cannot say that the General Release will be a bar to Zabit's claims against Caterpillar and Peterson.

### 2. Count II Shall Be Dismissed Without Leave to Amend.

Caterpillar and Peterson also argue that Count II must be dismissed because Zabit cannot establish the requisite contractual privity. Zabit argues in opposition that privity is not required

7

for claims of breach of implied warranty when a claim for violations of the MMWA are also asserted. The Court finds Zabit's argument unpersuasive.[3]

Under either Florida or California law, privity of contract is required to maintain a claim for breach of the implied warranty of merchantability. *See Atkinson v. Elk Corp. of Texas*, __ Cal. Rptr. 3d __, 2006 WL 2425017 at *9 (Cal. App. Aug. 23, 2006); *Kramer v. Piper Aircraft Corp.*, 520 So.2d 37, 39 (Fla. 1988); *see also Rentas v. Daimlerchrysler Corp.*, 936 So.2d 747, 751 (Fla. App. 2006) (granting motion to dismiss breach of implied warranty claim where there was no privity notwithstanding issuance of written warranty to ultimate user).

Although the *Atkinson* court concluded that the privity requirement should be relaxed on the facts presented, this does not alter the Court's analysis as to Caterpillar or Peterson. The *Atkinson* court's holding was based upon the fact that the manufacturer had issued a written warranty on the product in question, roofing shingles, and also was based upon the fact that the plaintiff relied on that warranty when he instructed his contractor to use the defendant's roofing shingles. *Atkinson*, 2006 WL 2425017 at *1. Although Caterpillar did issue a written warranty with respect to the engines, there are no facts alleged to show that Zabit relied on that warranty when he decided to purchase the yacht. Indeed, Zabit contends he did not receive this written warranty until approximately May 2006. (Zabit Decl., ¶ 21.) Thus, Zabit could not amend to alleges facts to show that, in fact, he did rely on Caterpillar's Limited Warranty in making his decision to purchase the yacht. Accordingly, the Court finds that *Atkinson* is inapplicable on the facts of this case and that the privity requirement would not be relaxed under California law.

Accordingly, because Zabit cannot establish privity of contract, his second cause of action fails.

---

[3] The question of whether privity is required when an MMWA claim is asserted with a separate stand alone claim for breach of the implied warranty of merchantability has not been addressed by the Ninth Circuit. However, an "implied warranty" under the MMWA is defined as "an implied warranty arising under State law." 15 U.S.C. § 2301(7). Courts interpreting this provision of the MMWA have concluded that if the applicable state law requires privity of contract, the plaintiff must establish privity of contract to maintain a claim under the MMWA. *See, e.g., Haugland v. Winnebago Indus.*, 327 F. Supp. 2d 1092, 1096 & n.13 (D. Ariz. 2004) (citing cases and noting Seventh, Second and D.C. Circuits and other lower federal courts have required privity of contract in MMWA claims where underlying state law requires privity).

**CONCLUSION**

For the reasons set forth above, Caterpillar's and Peterson's motions to dismiss Count II are GRANTED and Count II is dismissed as to these defendants without leave to amend.

By separate order issued this date, the Court has given Zabit leave to amend his complaint to the extent it asserts claims against Ferretti, and ordered that any such amended complaint be filed by November 2, 2006. If Zabit files a Second Amended Complaint, he shall not include a claim for breach of the implied warranty of merchantability against Caterpillar or Peterson. The defendants' responsive pleadings shall be due twenty days after service of the Second Amended Complaint.

The parties shall appear for a case management conference on January 19, 2007, and shall file a case management conference statement on or before January 12, 2007.

**IT IS SO ORDERED.**

Dated: October 23, 2006

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE