IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM ZABIT, | |
| Plaintiff, | No. C 06-01252 JSW |
| v. | **ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| FERRETTI GROUP, USA, et al. | |
| Defendants. | |

### INTRODUCTION

This matter comes before the Court upon consideration of the motion for summary adjudication filed by Plaintiff William Zabit ("Zabit"), and the motion for summary judgment filed by Defendants Peterson Power Systems, Inc. ("Peterson"), and Caterpillar, Inc. ("Caterpillar") (collectively "Defendants"). The Court has considered the parties' pleadings and relevant legal authority and has had the benefit of oral argument. For the reasons set forth in this Order, the Court also concludes that Defendants have established that the General Release is clear and unambiguous and that, absent a valid defense, it would bar Zabit's claims against them. The Court also concludes that the General Release was supported by adequate consideration and that Zabit has not established a genuine issue of material fact with respect to his contentions that he signed the General Release under economic duress and that the Defendants materially breached the terms of the General Release.

However, the Court also concludes that certain issues require further factual development and for that reason DENIES WITHOUT PREJUDICE Zabit's motion, and

GRANTS IN PART AND DENIES IN PART WITHOUT PREJUDICE Defendants' motion.

## BACKGROUND[1]

In April, 2000, Zabit purchased a 1999 Ferretti yacht equipped with Caterpillar brand engines for $589,000. Zabit took delivery of the yacht from the seller, Allied Marine Group, Inc., in Stuart, Florida. (Second Amended Complaint ("SAC") ¶ 10; Declaration of William Zabit ("Zabit Decl.") ¶ 1.) Zabit claims he did not receive a warranty with respect to the engines at the time of purchase or delivery. (Zabit Decl. ¶ 2.) However, the Caterpillar Limited Warranty was found on the yacht, albeit after Zabit instituted this lawsuit. (SAC ¶ 27; Zabit Decl. ¶ 19.)

The parties agree that the Caterpillar Limited Warranty provides, in pertinent part, that for "new ... 3126 ... marine propulsion engines and marine transmissions sold by Caterpillar for use with such engines, used in non-revenue producing pleasure craft applications the standard warranty period is 24 months or 1000 hours, whichever occurs first, after date of delivery to the first user." (*See* Declaration of Greg Anton in Support of Zabit's Motion ("Anton Supp. Decl."), Ex. 2 (Caterpillar Limited Warranty).)[2] The Caterpillar Limited Warranty also provides for an extended warranty period of sixty months or 2000 hours after the date of delivery to the first user, whichever occurred first, for certain component parts. (*Id.* at 1.)

The Caterpillar Limited Warranty describes Caterpillar's responsibilities, in part, as follows:

> If a defect in material or workmanship is found during the *standard warranty period*, or the *extended warranty period* if applicable, Caterpillar will, during normal working hours and through a place of business of a Caterpillar dealer or other source approved by Caterpillar:  Provide (at Caterpillar's choice) new, Remanufactured or Caterpillar-approved repaired parts or assembled components needed to correct the defect. ... Provide reasonable or customary labor needed to correct the defect, including labor to **disconnect** the product from and **reconnect** the product to its attached equipment, mounting, and support systems if required.

---

[1] Many of the material facts in this case are undisputed. The parties, however, disagree about the legal conclusions to be drawn from those facts.

[2] Defendants' objections to the documents submitted by Zabit in support of his motion, each of which are documents produced to Zabit by the Defendants and each of which are documents authored by or prepared on behalf of the Defendants, are OVERRULED.

2

(*Id.* (italics as in original, emphasis in bold added).)

With respect to the "User Responsibilities," the Caterpillar Limited Warranty provides, in part, that "[d]uring the *standard and extended warranty periods*, the user is responsible for: ... Premium or overtime labor costs.  Labor and material costs for product **removal and reinstallation**, except as stated under 'Caterpillar Responsibilities.'"  (*Id.* (italics as in original, emphasis in bold added).)

Zabit attempted, without success, to sell the yacht shortly after he purchased it. (Declaration of Daniel W. Bir in Support of Defendants' Motion ("Bir Supp. Decl."), Ex. G (Deposition of William Zabit Vol. I ("Zabit Depo. I") at 43:9-25.)  Thereafter, in or about September 2002, Zabit learned that the oil in his engines contained excessive amounts of metallic substances.  Zabit attests that he "immediately" contacted Defendants and subsequently was advised that the engines were manufactured defectively.  (Zabit Decl. ¶¶ 5-8; Declaration of Randy Day in Support of Defendants' Motion ("Day Supp. Decl.") ¶¶ 5-6.)

When Zabit first contacted Caterpillar, through Peterson, Peterson advised him that Caterpillar would replace the engines but also advised Zabit that he would be responsible for the costs associated with removal and re-installation of the engines.  (*See* Zabit Decl. ¶ 8; Day Supp. Decl. ¶¶ 7-8.)  Zabit did not accept Caterpillar's offer and sought assistance from Ferretti. (Zabit Decl. ¶ 10.)  In approximately March 2004, Zabit contacted Caterpillar again, and, at that time, Caterpillar offered Zabit two new replacement engines, with new warranties, on the condition that he sign a General Release.  Caterpillar maintained its position that Zabit would be required to pay for removal and reinstallation costs.  (Day Supp. Decl. ¶¶ 7-9.)  Zabit again did not accept Caterpillar's offer immediately, and he continued in his efforts to sell the yacht.

Zabit eventually sold the yacht on or about February 18, 2005 for $300,000.  (Bir Supp. Decl., Ex. L; Zabit Depo. I at 82:2-83:15.)  The Bill of Sale between Zabit and the buyer provides that Zaibt "made [the buyer] aware of the swap out offered by Caterpillar, with an approximate cost of $20k *to him* to have KKMI remove old and replace new.  I have also gotten agreement from Caterpillar that warranty will transfer to new owner.  *I will* coordinate scheduling of work with KKMI and *sign off on release as per my discussion with Caterpillar*

3

*and Dirk."* (Bir Supp. Decl., Ex. L (emphasis added).) Zabit testified that pursuant to his agreement with the buyer, he (Zabit) is obligated to attempt to recover the costs of removing and replacing the engines. (Bir. Supp. Decl., Ex. H (Deposition of William Zabit Vol. II ("Zabit Depo. II") at 141:23-143:10, 145:8-147:11, 161:8-21, 162:6-163:19).)

On March 2, 2005, Zabit signed the General Release, which provides, in pertinent part:

> BILL ZABIT ... for and in consideration as follows:
>
> 1. Caterpillar agrees to provide ZABIT two (2) new Model 3126 Engines at no charge;
> 2. The two (2) new Model 3126 Engines will be covered under the terms of Caterpillar's standard warranty provisions;
> 3. Zabit agrees to pay for all costs associated with removal and installation, and
> 4. The two (2) Model 3126 Marine Engines bearing serial numbers 6SR00497 and 6SR00498 will become the property of Caterpillar Inc., the receipt and sufficiency of which is hereby acknowledged, does for himself ... successors or assigns hereby release and forever discharge Caterpillar, Inc. and its subsidiaries, affiliates, dealers, agents, servants, successors, assigns, and employees ... from all causes of action, suits, claims, demands and damages, in law or in equity, known or unknown, including all claims with respect to design, manufacture, repairs, warranties or extended service programs, arising out of or in any manner connected with the ownership, use, or failure of two (2) Model 3126 Caterpillar Engine, serial number 6SR00497 and 6SR00498, from their respective dates of purchase through the date of this Release.

(Bir. Supp. Decl., Ex. C.)

The General Release contains the following handwritten statement: "signing this release in no way precludes me or my heirs, assigns, agents, etc. from making any type of claim against Ferretti Yachts: the seller and manufacturer of the vessel containing the above described engines." (*Id.*) Zabit admits that he read and understood the Release and admits that he understood he was releasing his right to "go after Caterpillar and Peterson." (Zabit Depo. II at 154:25-155:12, 167:1-21, 221:12-222:5.)

## ANALYSIS

**A.    Legal Standards on Motions for Summary Judgment.**

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

4

matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case. *Id.* at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.   Zabit's Motion for Summary Adjudication is Denied Without Prejudice.**

Zabit moves for summary adjudication on his first cause of action, violation of the Magnusson-Moss Warranty Act, which in part depends upon the interpretation of the Caterpillar Limited Warranty. Because discovery is not yet closed, and because the outstanding discovery with respect to Zabit's defense to the General Release may impact Zabit's ability to proceed on this cause of action, the Court DENIES WITHOUT PREJUDICE Zabit's motion.

5

## C. Defendants' Motion for Summary Judgment is Granted in Part and Denied Without Prejudice In Part.

Defendants assert that the General Release bars each of Zabit's claims. "[A] written release extinguishes any obligation covered by [its] terms, provided it has not been obtained by fraud, deception, misrepresentation, duress, or undue influence." *Skrbina v. Fleming Companies,* 45 Cal. App. 4th 1353, 1366 (1996). In general, the determination of "[w]hether a contract term is clear and unambiguous is a question of law, not fact." *Sanchez v. Bally's Total Fitness, Corp.,* 68 Cal. App. 4th 62, 69 (1998). Where, as here, the parties have not introduced conflicting parol evidence regarding the General Release, the Court can interpret the document as a matter of law. *Id.*

The General Release states that Zabit released Caterpillar and Peterson "from all causes of action, suits, claims, demands and damages, in law or in equity, known or unknown," relating to the issues with the engines. (Bir. Supp. Decl., Ex. C.) The Court concludes that the language is clear and unambiguous. Indeed Zabit admits that he read and understood the General Release. He also admits that he knew that it meant he was giving up his rights to demand relief from Caterpillar or Peterson. (Zabit Depo. II at 154:25-155:12, 167:1-21, 221:12-222:5.) Thus, the General Release bars all claims that existed at the time Zabit and Defendants signed it, unless Zabit can establish a defense to its enforcement. *See, e.g., San Diego Hospice v. County of San Diego*, 31 Cal. App. 4th 1048, 1052 (1995); *Winet v. Price,* 4 Cal. App. 4th 1159, 1172-73 (1992).

### 1. Zabit has not met his burden to establish economic duress bars enforcement of the release.

Zabit contends that he signed the General Release under economic duress. Courts have recognized that the doctrine of economic duress may be a basis for rescinding a settlement agreement. *See Rich & Whillock, Inc. v. Ashton Development, Inc.,* 157 Cal. App. 3d 1154, 1158-59 (1984). In order to establish the defense, a party must demonstrate that he or she "had no 'reasonable alternative' to the action it now seeks to avoid (generally, agreeing to contract).

6

If a reasonable alternative was available, and there hence was no compelling necessity to submit to the coercive demands, economic duress cannot be established." *CrossTalk Productions, Inc. v. Jacobson*, 65 Cal. App. 4th 631, 644 (1998). The "wrongful act" need be nothing more than "[t]he assertion of a claim known to be false or a bad faith threat to breach a contract or to withhold a payment," where the person subject to the act has "no reasonable alternative but to succumb" because "the only other alternative is bankruptcy or financial ruin." *Rich & Whillock*, 157 Cal. App. 3d at 1159; *see also San Diego Hospice*, 31 Cal. App. 4th at 1058 (holding that proof of the existence of the following factors was sufficient to establish economic duress: "(1) the debtor knew there was no legitimate dispute and that it was liable for the full amount; (2) the debtor nevertheless refused in bad faith to pay and thereby created the economic duress of imminent bankruptcy; (3) the debtor, knowing the vulnerability its own bad faith had created, used the situation to escape an acknowledged debt; and (4) the creditor was forced to accept an inequitably low amount."].)

In this case, even if Zabit could show that Defendants asserted their warranty rights in bad faith, his defense of economic defense still would fail. Although Zabit may indeed have sold the yacht at a loss of approximately $289,000, it is his burden to present evidence that his only reasonable alternative was to sign the release or face "financial ruin." Zabit, however, has failed to submit any such evidence and therefore has not met his burden in opposing Defendant's motion. Accordingly, the Court GRANTS IN PART Defendant's motion on this basis.[3]

//

---

[3] Zabit also contends that Defendants breached the General Release because they did not, in fact, provide him with new engines. The evidence submitted by Zabit states that Defendants did provide new engines but that certain component parts were transferred during the installation. Zabit has failed to present sufficient evidence to suggest that this constituted a material breach, and he cannot avoid the terms of the General Release on this basis. In addition, the Court rejects Zabit's contention that the General Release was not supported by adequate consideration. Even if Defendants were obligated by their warranty give Zabit new engines to replace the defectively manufactured engines, nothing in that warranty requires them to provide Zabit with a new warranty on the replacement engines or to extend the warranty term. As such, the Court concludes that, as a matter of law, the General Release was supported by adequate consideration. *See* Cal. Civ. Code § 1605. The Court GRANTS IN PART Defendants' motion for these reasons as well.

7

### 2. The record requires further development on the defense of fraudulent inducement.

Zabit also contends that Defendants fraudulently induced him to sign the General Release. "It is well established that a party to an agreement induced by fraudulent misrepresentations or nondisclosures is entitled to rescind, notwithstanding the existence of purported exculpatory provisions contained in the agreement." *Danzig v. Jack Grynberg & Associates*, 161 Cal. App. 3d 1128, 1138 (1984). A party to a contract may demonstrate that he was fraudulently induced to enter a contract by showing that the other party intended to induce him to enter the contract by use any of the following means:

> 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;
> 2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true;
> 3. The suppression of that which is true, by one having knowledge or belief of the fact;
> 4. A promise made without any intention of performing it; or,
> 5. Any other act fitted to deceive.

Cal. Civ. Code § 1572.

In his papers, Zabit suggests that Defendants concealed from him the fact that the engines were defective. However, Zabit admits that he learned the engines were defective in 2002 and that he signed the General Release in 2005. Thus, the engine defects were not concealed from him at the time he signed the General Release, and he cannot avoid the General Release on this basis.

At the hearing, Zabit clarified that he contends Defendants concealed from him the fact that the engine repairs were covered by the Caterpillar Limited Warranty and concealed from him the scope of that warranty.[4] Thus, Zabit's fraudulent inducement claim is, in part, premised upon an assertion that the Defendants told him that removal and replacement costs were not covered by the Caterpillar Limited Warranty when in fact they were. Zabit also

---

[4] There is no evidence to suggest that Caterpillar or Peterson suggested that Caterpillar did not have a warranty, when, in fact, it did. Indeed, the record suggests that Zabit did not ask to see a warranty and also suggests that if he had located the warranty, that he would not have read it. (*See* Zabit Depo. I at 84:16-22, 89:5-11; Zabit Depo. II at 112:14-113:19.)

8

contends that Defendants concealed from him the terms of the Service Letter, which Zabit contends required Defendants to cover the costs of removal and reinstallation.

The terms of the Caterpillar Limited Warranty state that Caterpillar is responsible for labor costs associated with disconnecting and re-connecting the product, and further states that the user is responsible for labor costs associated with removal and reinstallation of the product. In comparison, the Service Letter could be read to suggest that, with respect to this particular defect in engines of a certain age, Caterpillar would assume the labor costs associated with removing and reinstalling the product, *notwithstanding* the terms of the Caterpillar Limited Warranty. (*See* Anton Decl., Ex. 2 at PPSI 00026.)

Defendants deny that the Service Letter alters its obligations under the Caterpillar Limited Warranty and deny that the terms of that Service Letter covered labor costs associated with removing and reinstalling the engines. (*See* Declaration of David B. Anderson in Opposition to Zabit's Motion for Summary Adjudication, ¶ 7.)

The Service Letter was published in January 2001. Thus, it was in effect at the time Zabit claims he first contacted Defendants about the problem with his engines. However, based on the record before this Court, Zabit did not contact Caterpillar again until March 2004. Moreover, Caterpillar did not send Zabit the General Release until December 20, 2004. Finally, as noted, Zabit did not sign the General Release until March 2005. Thus, by the time he was presented with and signed the General Release, the Service Letter had expired. (*See* Anton Supp. Decl., Ex. 2 at PPSI 00024.) The materiality of the Service Letter to Zabit's decision to enter into the General Release therefore depends on what, if anything, Zabit was told or what, if anything, Defendants failed to tell Zabit before it expired in January 2004.

Prior to the hearing, and before briefing was complete on the pending motions, the Court ordered Defendants to produce discovery pertaining to how they responded to other claims by owners of engines with these defects. Because Defendants' treatment of other customers may impact the question of whether they failed to disclose material information to Zabit, and also may impact the manner in which they interpreted the scope of the Caterpillar

9

Limited Warranty and the meaning of the Service Letter, the Court shall DENY WITHOUT PREJUDICE Defendants' motion on this issue to permit the record to be developed.

## CONCLUSION

For the reasons set forth above, the Court DENIES WITHOUT PREJUDICE Zabit's motion, and GRANTS IN PART AND DENIES IN PART WITHOUT PREJUDICE IN PART, Defendants' motion. The parties are FURTHER ORDERED to appear for a further case management conference on **Friday, February 8, 2008, at 1:30 p.m.** The parties shall submit a supplemental joint case management statement by Friday, February 1, 2008, that shall be limited to whether they intend to renew their motions for summary judgment on the issues remaining in the case after this Order. The parties shall submit a proposed schedule for addressing such motions prior to the currently scheduled pretrial and trial dates.

**IT IS SO ORDERED.**

Dated: October 11, 2007

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

10