**NOT FOR CITATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM ZABIT,<br><br>           Plaintiff,<br><br>   v.<br><br>PETERSON POWER SYSTEMS, INC. and CATERPILLAR, INC.,<br><br>           Defendants.<br>_____/ | No. C 06-01252 JSW<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

Now before the Court is the motion for summary judgment filed by Defendants Peterson Power Systems, Inc. ("Peterson"), and Caterpillar, Inc. ("Caterpillar") (collectively "Defendants"). Having carefully considered the parties' papers, relevant legal authority, and the record in this case, the Court HEREBY GRANTS Defendants' motion.

**EVIDENTIARY OBJECTIONS**

**A.     Zabit's Objections to Evidence Submitted in Support of Defendants' Motion.**

Plaintiff objects to the testimony set forth on page 92, line 7 through page 93, line 17, of the Deposition of Virgil Newman, on the ground that the questions posed call for speculation, that the witness lacks personal knowledge, and that the questions posed are not relevant. Zabit also objects to the testimony set forth on page 93, line 17 through page 94, line 1 on the ground

that Newman lacks personal knowledge. Zabit's objections to Newman's testimony at 92:7-18, on the ground that the questions posed call for speculation as to dealer expectations, are SUSTAINED. The objections to testimony at 92:19-94:3 are OVERRULED.

Zabit also objects to testimony set forth on page 147, line 17 through page 148, line 2 of the December 20, 2007 deposition of Jeffrey DeGroot, on the ground that the questions posed call for speculation and are irrelevant. Those objections are SUSTAINED on the basis that the questions posed call for speculation.

**B.    Defendants' Objections to Evidence Submitted in Support of Zabit's Opposition.**

    **1.    The Warranty Stories.**

Defendants object to "warranty stories" that Zabit submits as Exhibit A to the Declaration of John Alden, on the ground that they have not been properly authenticated, lack proper foundation, and contain inadmissible hearsay. The objections are OVERRULED. Defendants produced these documents, and Zabit proffers deposition testimony of witnesses who identified these documents. Moreover, Defendants also rely on warranty stories to establish what they contend is the proper interpretation of the scope of the Caterpillar Limited Warranty. Defendants also object to the submission of these warranty stories "to the extent they are being offered to mislead the Court." (Def. Evid. Obj. at 2:10-17.) That objection is OVERRULED.

Defendants also object to warranty stories that Zabit submits, which reference Government vessels, on the ground that these warranty stories are irrelevant because Caterpillar's contracts with the United States Government may contain different terms and conditions than contracts applicable to pleasure crafts. This objection is OVERRULED, because there is nothing in the record that demonstrates the contracts are in fact different.

    **2.    Deposition Excerpts.**

Defendants object to the deposition excerpts that Zabit submits as Exhibits B through E to the Alden Declaration on the ground that Zabit's use of these excerpts is misleading, incomplete and out of context. (*See, e.g.,* Def. Evid. Obj. at 3:19-20.) Those objections are OVERRULED, but the Court shall consider the additional testimony submitted by Defendants

to complete portions of the testimony submitted by Zabit.  Defendants also object that these excerpts are irrelevant and are being used to re-litigate issues that have been decided.  The Court shall not consider testimony that is being offered in an attempt to re-litigate issues that were decided in the Order on Cross Motions for Summary Judgment dated October 11, 2007.  To the extent the Court considers any testimony irrelevant, it shall address those objections in its analysis.

### 3. The Zabit Declaration.

Defendants object to paragraphs 8, 9, 11, 12, 13, 15, 17, and 19 of the Declaration of William Zabit on the grounds that these paragraphs contain testimony that attempts to re-litigate issues that the Court has already decided and that his testimony is irrelevant.  Again, the Court shall not consider evidence that attempts to re-litigate issues that have been decided, and to the extent the Court deems the testimony irrelevant, it shall address those objections in its analysis.  Defendants also argue that these paragraphs contradict Zabit's previously sworn testimony.  Defendants do not point the Court to the allegedly contradictory testimony, and it is not this Court's task to scour the record for the alleged contradictions.  *Cf. Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)).  Accordingly, this latter objection is OVERRULED.

### 4. The Friedman Declaration.

Defendants object to the Declaration of Robert Friedman, in its entirety, on the ground that his testimony is irrelevant.  The Court SUSTAINS the relevance objections to paragraphs 7, 9, 12, 25, and 26.  Zabit purports to offer Friedman as an expert on the manner in which Caterpillar interpreted and applied the terms and conditions of the Caterpillar Limited Warranty.  The Court concludes that the evidence Friedman offers does not qualify as expert testimony under Federal Rule of Evidence 702.  The objections to paragraphs 11, 13, 18:11-16, 19, 20, 22, 23, 24, 27 and 28 are SUSTAINED.  The objections to paragraphs 1-6, 8, 10, 14, 15-17, 18:9-11, and 21 are OVERRULED.

3

**5.     The Johnson Declaration**.

Defendants object to the Declaration of Joseph Johnson on the ground that he was belatedly disclosed as a witness and on the ground that he lacks personal knowledge of the matters about which he testifies. Zabit responds that he need not have disclosed Mr. Johnson because he is offered as an expert on the interpretation and application of the Caterpillar Limited Warranty. The evidence offered by Mr. Johnson does not qualify as expert testimony under Rule 702, nor does it purport to rebut an expert report prepared by Defendants. Moreover, the issue of whether Zabit was fraudulently induced into signing the release has been at issue since the outset of this litigation. Thus, Mr. Johnson's testimony reasonably could have been anticipated well before the filing of Defendants' motion. Indeed, Mr. Johnson executed his declaration four days *before* Defendants' filed their motion. The Court concludes that Zabit failed to disclose Mr. Johnson in a timely fashion and that he has not offered substantial justification for this failure. The Court has not set a trial date. However, because the deadline for completing fact discovery has expired, the Court finds that the belated disclosure was not harmless. *See Wong v. Regents of the Univ. of Calif.*, 410 F.3d 1052, 1062 (9th Cir. 2005) (affirming district court's exclusion of expert testimony submitted in response to motion for summary judgment where deadline to disclose experts had passed, notwithstanding the fact that trial date was "some months away"). Therefore, Defendants' objection to the Johnson Declaration is SUSTAINED, and the Court has not considered it.

## BACKGROUND

The following facts are undisputed, unless otherwise noted. In April 2000, Zabit purchased a 1999 Feretti yacht equipped with Caterpillar brand engines. Unfortunately, those engines had a defect which precipitated this fateful voyage to the courthouse. At the time Zabit discovered the defects in the engines, the engines were covered by the Caterpillar Limited Warranty. That warranty provides, in pertinent part:

**Caterpillar Responsibilities**

> If a defect in material or workmanship is found during the *standard warranty period* or the *extended warranty period* if applicable, Caterpillar will, during normal working hours and through a place of business of a Caterpillar dealer or other source approved by Caterpillar:

4

1
2
•   Provide (at Caterpillar's choice) new, Remanufactured or Caterpillar-approved repaired parts or assembled components needed to correct the defect.

3
4
•   Replace lubricating oil, filters, antifreeze and other service items made unusable by the defect.

5
6
•   Provide reasonable and customary labor needed to correct the defect, including labor to disconnect the product from and reconnect the product the product to its attached equipment, mounting, and support systems if required.

7   ...

8   **User Responsibilities**

9
10
During the *standard and extended warranty periods*, the user is responsible for:
...

11
12
•   Labor and material costs for product removal and reinstallation, except as stated under "Caterpillar Responsibilities."

13  (Declaration of Daniel Bir ("Bir Decl."), Ex. C (emphasis in original).)

14  On or about January 11, 2001, Caterpillar issued a Service Letter that addressed the

15  manner in which Caterpillar would resolve problems with the defect in the type of engine

16  installed in Zabit's yacht. (Bir Decl., Ex. D ("Service Letter").)  That Service Letter contains a

17  section entitled "Service Claim Allowances," which provides for 18 hours for "Separate &

18  Connect," and 15 hours for "Disassemble & Assemble." (Service Letter at 3.) The Service

19  Letter also contains a section entitled "Rework Procedure." (*Id.* at 4.) The third step of the

20  Rework Procedure is to "[r]emove failed engine." (*Id.*) The fifth step provides that "[i]f the

21  sister engine has the Vernon block, and if it meets the requirements for rework listed under

22  'Affected Product' (note Group 1 or Group 2), then remove sister engine." (*Id.*) The sixth step

23  is to "[r]eplace short block.  Assure that Valves have been updated per PS4486.  Transfer

24  components, paint, and re-install both engines." (*Id.*)

25  According to the author of the Service Letter, Virgil Newman, Service Letters are

26  provided to Caterpillar dealers, not to customers. (Bir Decl., Ex. F (Deposition of Virgil

27  Newman ("Newman Depo.") at 18:12-16, 29:14-30:2, 58:5-14).)  Newman also testified that the

28  18 hours allocated for separation and connection, as referenced in the Service Claim

5

1  Allowances section, refers to the number of hours it would take "[t]o separate the engine from
2  its mounting in the boat." (*Id.* at 59:18-23, 60:1-12.) Newman also testified that it was
3  possible, but not advisable, to perform the repairs under the Service Letter without removing an
4  engine from a boat. "It's best if you simply remove the engine and then do the repairs and then
5  reinstall the engine." (*Id.* at 69:11-70:10.)

6  According to Newman, for engines that were between 0-5 years old, the 100% labor
7  allowance set forth in the Service Letter meant that Caterpillar would pay a dealer "for up to 18
8  hours at dealer net on labor to cover the separate and correct [for example]. It would not go
9  over that." (*Id.* at 88:14-23.) Newman also testified that the "Caterpillar warranty clearly states
10  that removal and reinstallation of the engine is not covered by warranty," and that although the
11  Rework Procedure does suggest removing the engine, that suggestion was made

> because [the repairs] are quite extensive and very difficult to do inside a boat, and we wanted this repair to be done properly so for that reason the suggestion to remove the engine [*sic*]. This page does not in any way reflect what Caterpillar will pay in this PSP and what they will not pay. Just gives us a general procedure that this is – in our opinion, the best method of going on about to make the repairs. What we will pay and what we will not pay is listed specifically on ... Page 3 of the exhibit in the block [the Service Claim allowances section], and it will pay up to that number of hours but no more. It will cover for those items and no more.

17  (*Id.* at 92:19-93:17.) Further, in Newman's experience, he had "not seen an instance where
18  warranty covered the actual removal from the boat or the reinstallation of the engine from the
19  boat." (*Id.* at 94:1-3; *see also* Bir. Decl. Ex. G (Dec. 20, 2007 Deposition of Jeffrey DeGroot
20  ("DeGroot II Depo.") at 146:8-18 (noting that requiring customer to pay for cost of removal and
21  reinstallation for repair under Service Letter would be consistent with Caterpillar Limited
22  Warranty).)

23  Defendants also submit warranty claim stories that they contend show that the cost of
24  removing and reinstalling the engines is not covered under the Service Letter. (Bir Decl., Ex. G
25  (DeGroot Depo. II at 31:1-34:24, 103:13-109:14, 135:24-136:21, 146:22-147:16, 148:4-9), Ex. I
26  (warranty claim with narrative stating that "advise customer that he is responsible for costs
27  incurred to remove engine prior to starting work"), Ex. J, Ex. K.) On some occasions, however,
28  Caterpillar will extend "goodwill" to a customer and cover costs that would not otherwise be

6

covered by the Caterpillar Limited Warranty or the Service Letter.  (*See, e.g.,* Bir Decl., Ex. H (Deposition of Steven R. Cooksey ("Cooksey Depo.") at 117:17-120:12, 126:20-127:2), Ex. M (noting "goodwill settlement" for customer satisfaction, and covering crane service); Declaration of Randy Day ("Day Decl.") ¶¶ 17-18, Exs. P, Q (extending goodwill to cover costs of removal of engines for work done under warranty).)  Zabit, in turn, offers warranty claim stories and deposition testimony from Defendants, that he contends demonstrates that Defendants did consider removal and reinstallation costs to be covered by the warranty.  (Alden Decl., Ex. A; *see e.g.* Alden Decl., Ex. B (DeGroot Depo. II at 23:4-29;19, 35:12-24, 37:12-38:23, 53:19-54:20, 65:1-68:6, 73:5-78:2, 78:17-82:13), Ex. D (Cooksey Depo. at 85:10-90:15).)

It is undisputed that Zabit was not pleased with the prospect of having to pay for the costs to remove and re-install the engines.  Zabit, therefore, spent several months trying to get Defendants, including former defendant Ferretti, to cover these costs.  (*See* Bir Decl., Ex. A (Oct. 2007 Order at 6:14-22).)  In approximately December 2004, Defendants offered Zabit two new engines, complete with new warranties.  The Defendants requested that in return Zabit sign a General Release.  (*Id.*)  Zabit did not accept this offer immediately.  On February 18, 2005, Zabit sold the yacht, and the agreement with the new buyer provided that Zabit would be obligated to attempt to recover the costs of removing and reinstalling the engines. (*Id.* at 3:23-4:4.)  Thereafter, on March 2, 2005, Zabit accepted Defendants offer and signed the General Release, which provides:

> BILL ZABIT ... for and in consideration as follows:
>
> 1. Caterpillar agrees to provide ZABIT two (2) new Model 3126 Engines at no charge;
> 2. The two (2) new Model 3126 Engines will be covered under the terms of Caterpillar's standard warranty provisions;
> 3. Zabit agrees to pay for all costs associated with removal and installation, and
> 4. The two (2) Model 3126 Marine Engines bearing serial numbers 6SR00497 and 6SR00498 will become the property of Caterpillar Inc.,
>
> the receipt and sufficiency of which is hereby acknowledged, does for himself ... successors or assigns hereby release and forever discharge Caterpillar, Inc. and its subsidiaries, affiliates, dealers, agents, servants, successors, assigns, and employees ... from all causes of action, suits, claims, demands and damages, in law or in equity, known or unknown, including all claims with respect to design, manufacture, repairs, warranties or extended

> service programs, arising out of or in any manner connected with the ownership, use, or failure of two (2) Model 3126 Caterpillar Engine, serial number 6SR00497 and 6SR00498, from their respective dates of purchase through the date of this Release.

(Bir. Decl., Ex. B.)

Zabit has admitted that he read and understood the Release, and he also has admitted that he was releasing his right to "'go after Caterpillar and Peterson.'" (Bir Decl., Ex. A (October 2007 Order at 4:21-22).) Email correspondence submitted by the parties, in connection with this motion also suggests that Zabit understood he was negotiating a settlement with Defendants and that he understood the terms of the agreement and was willing to enter into the General Release. (*See, e.g.,* Day Decl., Ex. O; Alden Decl., Ex. D (Cooksey Depo. Ex. 9).)

## ANALYSIS

### A. Legal Standards on Motions for Summary Judgment.

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case. *Id*. at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Where the moving party will have the burden of proof on an issue at

8

trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan*, 91 F.3d at 1279 (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.     Defendants' Motion for Summary Judgment is Granted.**

Defendants contend that the General Release is valid and enforceable and bars Zabit's claims. Zabit contends that the Defendants fraudulently induced him to sign the General Release. "It is well established that a party to an agreement induced by fraudulent misrepresentations or nondisclosures is entitled to rescind, notwithstanding the existence of purported exculpatory provisions contained in the agreement." *Danzig v. Jack Grynberg & Associates*, 161 Cal. App. 3d 1128, 1138 (1984).[1]

A party to a contract may demonstrate that he was fraudulently induced to enter a contract by showing that the other party intended to induce him to enter the contract by use any of the following means:

> 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;
> 2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true;
> 3. The suppression of that which is true, by one having knowledge or belief of the fact;
> 4. A promise made without any intention of performing it; or,
> 5. Any other act fitted to deceive.

Cal. Civ. Code § 1572.

---

[1] Defendants, for the first time, assert that Zabit should not be entitled to rescind because he did not give prompt notice and has not offered to return the new engines. (*See* Mot. at 18:13-20:25.) In light of the Court's ruling, as set forth in this Order, it does not address this argument.

9

Zabit previously argued that Defendants "concealed from him the fact that the engine repairs were covered by the Caterpillar Limited Warranty and concealed from him the scope of that warranty," and that they "concealed from him the terms of the Service Letter, which Zabit contends required Defendants to cover the costs of removal and installation." (*See* Bir. Decl., Ex. A (October 2007 Order at 8:21-9:2).) In opposition to the instant motion, Zabit also contends that Defendants falsely represented to him that: (1) he would have to pay for connection and disconnection costs; and (2) that he would have "to accept Defendants' offer and sign their release immediately or else incur an additional cost of $20,000 - $10,000 for each engine." (Zabit Decl., ¶¶ 15.a, 15.c.) The Court shall address each of these contentions in turn.

**1.   The Alleged Misrepresentations Regarding Removal and Reinstallation.**

In its October 2007 Order, the Court found that the terms of the Caterpillar Limited Warranty provided that the user, which in this case is Zabit, is responsible for labor costs associated with removal and installation of the product. (Bir. Decl., Ex. A (October 2007 Order at 12:3-5).) The Court allowed Zabit the opportunity to present evidence that Caterpillar in fact viewed removal and installation costs to be within the scope of its responsibilities under the Caterpillar Limited Warranty, notwithstanding the express terms of the Caterpillar Limited Warrant and notwithstanding Defendants' representations to Zabit that he was responsible for these costs. The Court concludes that Zabit has not met his burden to show a dispute of fact about whether the removal and installation cost were covered by the warranty or by the Service Letter.

Although Zabit heavily relies on the warranty stories, Mr. Newman testified that the Service Letter was not intended to cover removal and reinstallation costs. He also testified that in his experience he had "not seen an instance where warranty covered the actual removal from the boat or the reinstallation of the engine." (*See* Newman Depo. at 92:18-94:4.) Similarly, although the warranty stories referenced by Zabit contain narrative sections that state that an engine was removed and reinstalled, that is consistent with the procedures set forth in the

Service Letter, which Mr. Newman testified were intended to ensure that the repairs were done properly. (*Id.* at 92:18-93:17.)

Mr. DeGroot also testified that, with respect to the warranty claims that Zabit showed him, he did not see any claims where Caterpillar agreed to pay for the cost of engine removal and replacement. DeGroot reiterated that if a service technician or dealer told a customer that the customer would be responsible for these costs, it would be consistent both with the terms of the Service Letter and the Caterpillar Limited Warranty. (Reply Declaration of Daniel Bir, Ex. R (DeGroot Depo. II at 144:14-146:18).) Mr. DeGroot also testified that the fact that the words "remove engine" are used in the narrative of a warranty claim, "is not an indication" that Caterpillar paid for the removal. (Bir Decl., Ex. G (DeGroot Depo. II at 117:16-21).)

It is undisputed that "separation and connection" costs are distinct from "removal and reinstallation costs." Mr. Newman testified that the "Service Claim Allowances" section of the Service Letter reflects the number of hours Caterpillar would pay for labor "for the service steps that are going to be covered" by the Service Letter. (*See generally* Newman Depo. at 28:11-29:3, 45:18-23, 60:1-63:11, 88:6-89:18; *see also* Alden Decl., Ex. E (Deposition of Randy Day ("Day Depo.") at 75:17-24 (Service Claim Allowances "shows what Caterpillar is going to pay us *to do a specific task*") (emphasis added), 77:13-78:14).) However, although the Rework Procedure section of the Service Letter refers to removing and reinstalling the engine, there are no hours allotted for those steps in the Service Claim Allowances section. (Bir Decl., Ex. D at 3.) In contrast, the Service Claim Allowances section allots a specific number of hours that may be recovered for separation and connection. (*Id.*)

Zabit has not presented any admissible evidence that conflicts with this testimony.[2] Therefore, taking the facts in the light most favorable to Zabit, the Court concludes he has failed to meet his burden to show that Defendants misrepresented the terms of the Caterpillar

---

[2] Although Mr. Cooksey testified that rework is the same as repair and that one could not make the repair without removing the engine, he did not testify that labor costs for removal and reinstallation were included in the Service Claim Allowances. (*See* Alden Decl., Ex. D (Cooksey Depo. at 33:14-35:16).)

11

1  Limited Warranty.  Accordingly, he cannot avoid the terms of the General Release on this
2  basis.

### 2. The Alleged Misrepresentations Regarding Separation and Connection.

Zabit also contends that Defendants told him that he would have to pay for the "connection and disconnection costs.  This was false because my warranty covered such costs." (Zabit Decl. ¶ 15.a.)  It is undisputed that, under the Caterpillar Limited Warranty, Caterpillar is required to pay for "reasonable and customary labor needed to correct the defect, including labor to disconnect the product from and reconnect the product the product to its attached equipment, mounting, and support systems if required." (Bir. Decl., Ex. C.)  Zabit argues that this was fraud by omission, because Defendants failed to inform him that these costs were covered under the Caterpillar Limited Warranty.  Assuming for the sake of argument that Defendants were obligated to inform Zabit of the terms of the warranty, there is no evidence in the record to suggest that Defendants affirmatively concealed those terms from Zabit.  Nor is there any evidence that suggests they told him no such warranty existed.  In addition, as the Court previously found, although Zabit did not locate the warranty until after this litigation commenced, the evidence shows that even if it was in his possession he would not have read it. (Bir Decl., Ex. A (October 2007 Order at 8 n.8).)  Moreover, Defendants allegedly made these representations in connection with their offer to provide Zabit with new engines, which would be covered by new warranties.  The record also demonstrates that the offer extended to Zabit was completely *outside* of the terms of the Caterpillar Limited Warranty.

Taking the facts in the light most favorable to Zabit, the Court concludes that no reasonable jury could conclude that Defendants fraudulently induced Zabit to sign the General Release on this basis.

### 3. The Alleged Misrepresentations Regarding Fees and Deadlines.

Zabit contends that "[i]n the winter of 2004-2005, I was told I had to accept Defendants' offer and sign their release immediately or else incur an additional cost of $20,000-$10,00 for each ENGINE.  This was false in that my warranty provided for no such

12

1  cost to me and set no deadline for acceptance of any offers from the Defendants." (*See* Zabit
2  Decl. ¶ 15.) Zabit proffers testimony from Steve Cooksey and Randy Day, which indicates
3  that, at one point, Defendants did suggest that because of the time that had lapsed between the
4  offer they extended to Zabit on December 20, 2004, Defendants asked for an additional fee of
5  $10,000 per engine. The correspondence surrounding the execution of the General Release
6  also suggests that Defendants did set deadlines after which the offer would expire. (*See, e.g.,*
7  Alden Decl., Ex. D (Cooksey Depo. 131:4-13, 134:20-135:15), Cooksey Depo. Exs. 8, 9).)

8  Although Zabit argues that these statements were false because the fee and the
9  deadlines are not terms of the Caterpillar Limited Warranty, there is no evidence in the record
10 to suggest that Defendants ever suggested that they were. Rather, the evidence in the record
11 demonstrates that these statements were made to Zabit in connection with an attempt to resolve
12 the parties' dispute. In that context, the statements were true. The record also demonstrates
13 that Zabit did not find the additional $10,000 fee acceptable and it ultimately was withdrawn as
14 a condition. Thus, by the time Zabit accepted the terms of the General Release, the threat of an
15 additional fee was no longer on the table. (*See* Alden Decl., Ex. D (Cooksey Depo. Ex. 9
16 ("Very simply, own up to the agreement to replace the defective engines as you so promised in
17 the attached release. I told you, at least at this time, I am not pursuing the issue with
18 Caterpillar for the cost to replace the defective engines with the new ones.").) Taking the facts
19 in the light most favorable to Zabit, the Court concludes that no reasonable jury could conclude
20 Zabit relied on that statement when he decided to sign the General Release.

21 With respect to the alleged deadline, the Court also concludes that the statement was
22 made in the context of resolving the parties' dispute and, in that context, was a true statement.
23 Accordingly, Zabit cannot avoid the terms of the General Release on this basis. Therefore,
24 taking the facts in the light most favorable to Zabit, the Court concludes that no reasonable jury
25 could conclude that Zabit was fraudulently induced to sign the General Release.

13

**CONCLUSION**

For the foregoing reasons, the Court finds that Zabit has failed to demonstrate that the General Release is unenforceable. Defendants' motion for summary judgment is GRANTED. A separate judgment shall enter and the Clerk is directed to close the file.

**IT IS SO ORDERED.**

Dated: June 16, 2008

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE